IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID A. KRAVITS,                    )
            Plaintiff,               )
                                     )
    v.                               ) Civil Action No. 10-861
                                     )
ERIC K. SHINSEKI, Secretary,         )
Department of Veterans Affairs,)
                                     )
            Defendant.               )

                            MEMORANDUM

Gary L. Lancaster,                          February 2 4, 2012
Chief Judge.

    This is an employment discrimination action.  Plaintiff,

David A. Kravits, brings a claim for wrongful termination

against his former employer, Eric K. Shinseki, Secretary of the

Department of Veterans Affairs, under the Rehabilitation Act

(the "Act"), 29 U.S.C. §§ 701, et seq.  Mr. Kravits seeks back

pay, front pay or reinstatement, and other monetary

compensation.

    The Department of Veterans Affairs (the "Department") has

filed a motion for summary judgment, arguing primarily that Mr.

Kravits was not afflicted with a disability under the Act.  Mr.

Kravits argues that he was disabled within the meaning of the

Act, and that he was terminated because of his disability.

    For the following reasons, the Department's motion for

summary judgment will be denied.

I.    FACTUAL BACKGROUND

Unless otherwise indicated, the following material facts are undisputed. Additional material facts may be discussed elsewhere in this memorandum, in context.

A. Employment at the Butler VAMC

On September 14, 2008, Mr. Kravits was appointed to the position of Human Resources ("HR") Specialist Intern at the Butler VA Medical Center ("Butler VAMC"). This was a temporary appointment, not to continue past September 13, 2010. Mr. Kravits's immediate supervisor at Butler VAMC was Teneal Caw. Ms. Caw was aware that Mr. Kravits had back problems and fibromyalgia, but the parties dispute whether she was aware he had a disability.

Mr. Kravits was assigned to the Department's Staffing Section, where he was to work with HR Specialist Beth Holt. Ms. Holt was a co-worker who helped train Mr. Kravits; she was not his supervisor. Similar to Ms. Caw, Ms. Holt was aware that Mr. Kravits had back problems, but the parties dispute whether she was aware he had a legal disability.

From the beginning of his employment with Butler VAMC, there were concerns about Mr. Kravits's job performance, specifically with his lack of attention to detail. Ms. Caw was aware of these concerns. Mr. Kravits avers he sought accommodations that would allow him to perform his job

2

adequately, but none were provided. According to Mr. Kravits, he requested an ergonomic keyboard that would slide out from under his desk, like his colleague Ms. Holt's keyboard. Mr. Kravits testified that Ms. Holt denied the request, claiming the Butler VAMC could not afford it. Mr. Kravits also testified that he requested that Ms. Caw provide step-by-step instructions, or a checklist, for his projects. The Department asserts that Mr. Kravits never made a written request for accommodations in accordance with its procedures.

Due to his numerous mistakes, Ms. Holt started a log in November 2008 to document Mr. Kravits's mistakes on a daily basis. Mr. Kravits was informed of his lack of progress on multiple occasions, but his work did not improve. Mr. Kravits's job performance mistakes included the following:

- Being unable to prepare appropriate paperwork for a panel, despite having previously prepared at least three similar panels.

- Creating job announcements with numerous errors.

- Misplacing papers within a short time of receiving them.

- Being unable to successfully post a job to USA jobs without having to make corrections.

- Sending non-selection letters that contained inaccurate information.

Ms. Caw informed Mr. Kravits that he needed to learn and be proficient in all steps within the staffing section, and that he

3

needed to perform his job correctly in order to move to a position in another section of the office.

In February 2009, Michelle Dominski, HR Officer, began work at the Butler VAMC.  Ms. Dominski observed that Mr. Kravits was not progressing in the HR Internship Program.  Ms. Dominksi was not aware of Mr. Kravits's medical conditions.  In March 2009, Ms. Dominski and Ms. Caw contacted the National HR Intern Program Manager, Cheryl Wisnieski, to discuss concerns about Mr. Kravits's job performance.  Ms. Wisnieski indicated that, based on her experience with Mr. Kravits during training, she had also observed a lack of initiative on his part.  After speaking to Ms. Wisnieski, Ms. Dominski and Ms. Caw planned to meet with Mr. Kravits to reiterate their expectations regarding his job performance.

On April 17, 2009, Ms. Caw and Ms. Dominski met with Mr. Kravits to discuss his mid-year evaluation.  The Department states that the three discussed Mr. Kravits's errors, and Mr. Kravits was informed that he had not yet progressed to the point where he could move from the staffing section to another area of HR.  The Department further states that Ms. Caw and Ms. Dominski reiterated their performance expectations, and informed Mr. Kravits that without improvement it was possible he would not keep his position.  Mr. Kravits denies this characterization of the meeting.  He states that during the meeting he reviewed his

4

evaluation, which rated him as "fully meets expectations." According to Mr. Kravits, Ms. Caw and Ms. Dominski then informed him that he was not learning at the pace they wanted, and that they expected him to make fewer mistakes in the future.

In May 2009, Mr. Kravits was asked to work on a project for which he needed to request information from various parties. Mr. Kravits requested the information, but received only a small number of responses, and failed to follow-up to ensure that he had the number of responses necessary to complete the project. As a result of his failure to follow-up, the HR Specialist on the project had to step in and finish Mr. Kravits's work. Following this project, Mr. Kravits continued to make mistakes, leading to additional work for his supervisors.

On May 28, 2009, Ms. Caw and Mr. Kravits held their monthly meeting, during which they discussed his continuing errors. Ms. Caw asked for his feedback, and Mr. Kravits requested step-by-step instructions on how to complete his assigned tasks. Mr. Kravits denies this was the first time he requested this accommodation.

Mr. Kravits' troubles continued in early June 2009. A panel was cancelled because Mr. Kravits failed to ensure that he had enough qualified panelists. Also, a co-worker was required to complete Mr. Kravits's portion of a joint project when she found he had not completed any of his assigned work.

5

On June 12, 2009, Mr. Kravits received a letter from Patricia Nealon, the Director of the Butler VAMC, informing him that his temporary appointment would be terminated effective June 27, 2009.

B. Medical Conditions

Mr. Kravits claims that he is disabled due to the following conditions: fibromyalgia, thoracolumbar strain, irritable bowel syndrome, degenerative disc disease, sleep apnea, ulnar neuropathy at the left elbow, hypertension, depressive disorder, anxiety disorder, and post-traumatic stress disorder. Due to these conditions, Mr. Kravits applied for Social Security Disability benefits. This application was denied on January 14, 2008 because the Social Security Administration determined that his condition was not severe enough to keep him from working. On June 23, 2009, however, Mr. Kravits was awarded disability benefits by the Department of Veterans Affairs, retroactively effective June 1, 2008.

Mr. Kravits acknowledges that he takes medication for his disabilities, which reduces their symptoms. He also acknowledges that there were no "essential duties" of his position at the Butler VAMC that he was unable to perform because of his disabilities.

In June 2011, Mr. Kravits testified that his condition has worsened since he left the Butler VAMC. Mr. Kravits also

testified that he has engaged in physical and mental activities in connection with purchasing a home in December 2008, attending to estate issues following his father's death in March 2009, obtaining a college education between 2008 and 2010, and traveling to Thailand in November 2009.

## II.   STANDARD OF REVIEW

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   If the moving party meets its burden of proving that no genuine issue of material fact exists, then the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.   Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).   In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.   Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000) (citing cases).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue under the governing substantive law. See Anderson v. Liberty Lobby, 477 U.S. at 248-49. Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

In summary, the inquiry in ruling on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is such that the movant must prevail as a matter of law.

III. DISCUSSION

The Department asserts that Mr. Kravits's employment was terminated because of poor job performance.  Mr. Kravits argues that he was fired because of his disabilities.

The Rehabilitation Act, which applies the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") to federal employers, "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."   Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996).   To show a violation of the Rehabilitation Act, a plaintiff must first establish a prima facie case of discrimination.   Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (noting applicability of burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must initially show, (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job."   Id. at 184-85 (internal quotation omitted).

If the plaintiff does make a prima facie showing of discrimination, "the burden shifts to the employer to articulate

9

some legitimate, nondiscriminatory reason for the employment action." Wishkin, 476 F.3d at 185. Finally, if the employer meets this burden, "the plaintiff must then be afforded an opportunity to show that the employer's stated reason for the employment action . . . was pretextual." Id.

"In order to prove the employer's explanation is pretextual, the plaintiff must cast [ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact[-]finder could reasonably conclude that each reason was a fabrication . . . or . . . allow[ ] the fact[]finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. (internal quotation omitted). "A plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. (internal quotation omitted).

Here, the court finds that Mr. Kravits is disabled within the meaning of the Rehabilitation Act, and is entitled to a trial because he has adduced evidence to support a reasonable inference that disability discrimination was the cause of his

10

firing.    Accordingly,   we   deny   the   Department   of   Veterans
Affairs' motion for summary judgment.

### A. The Prima Facie Case

Because  there  is  no  dispute  that  Mr.  Kravits  was  terminated
from his position with the Department, to make out a prima facie
case   he   need   only   identify   evidence   that   could   reasonably
establish that he:    (1) has a disability and (2) was qualified
for  his  position,  with  or  without  reasonable  accommodations.
See Wishkin, 476 F.3d at 184-85.

#### a. Actual Disability

In   order   to   establish   that   he   has   a   disability   the
plaintiff must show that he is an individual who has:    "(1) a
physical or mental impairment which substantially limits one or
more of [his] major life activities, (2) has a record of such an
impairment,  or  (3)  is  regarded  as  having  such  an  impairment."
Wishkin,  476  F.3d  at  186  (citing  29  U.S.C.  §  705(20)(B));  see
also 42 U.S.C. § 12102(1).

On   January   1,   2009,   the   ADA   Amendments   Act   of   2008
("ADAAA"),  Pub.  L.  110-325,  122  Stat.  3553,  became  effective.
The ADAAA seeks to broaden the scope of disabilities covered by
the ADA after that scope had been narrowed by Supreme Court
interpretation.    See  Pub.  L.  110-325,  122  Stat.  3553  (finding
that Supreme Court precedent, e.g., Toyota Motor Mfg., Kentucky,
Inc.  v.  Williams,  534  U.S.  184  (2002),  and  Equal  Employment

11

Opportunity Commission ADA regulations narrowed the definition of disability inconsistent with congressional intent). Because Mr. Kravits's employment was terminated on June 12, 2009, the ADAAA applies here.[1]

In order to qualify as disabled under the first subsection of the definition of disability, a plaintiff must still initially prove that he has "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A).  Major life activities include ". . . performing manual tasks, seeing, hearing, eating, sleeping, . . . lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

Equal Employment Opportunity Commission ("EEOC") regulations provide guidance for interpreting the statute, including the term "substantially limits."  See 42 U.S.C. § 12205a ("Rule of construction regarding regulatory authority"). According to the regulations, the term substantially limits "is not meant to [impose] a demanding standard" and determining "whether an impairment 'substantially limits' a major life activity should not demand extensive analysis."  29 C.F.R. §

---

[1] The ADAAA definition of disability is applicable here because it amended the ADA definition of disability contained in 42 U.S.C. § 12102 as well as the applicable implementing regulations as identified in 42 U.S.C. § 12205a  Pub. L. 110-325, 122 Stat. 3553.

1630.2(j)(1)(i) and (iii).  The regulations further provide that the "term 'substantially limits' shall be construed broadly in favor of expansive coverage[.]"  29 C.F.R. § 1630.2(j)(1)(i).

Here, Mr. Kravits asserts that he suffers from several conditions: fibromyalgia, thoracolumbar strain, irritable bowel syndrome, degenerative disc disease, sleep apnea, ulnar neuropathy at the left elbow, hypertension, depressive disorder, anxiety disorder, and post-traumatic stress disorder.  These disorders qualify as physical or mental impairments within the meaning of the ADA's implementing regulations.  29 C.F.R. § 1630.2(h).  And several of them may be found to substantially impair major life activities.  Indeed, this case presented the possibility of a particularly brief inquiry on this element because one of Mr. Kravits's conditions – post-traumatic stress disorder – is listed as an impairment that will "virtually always be found to impose a substantial limitation on a major life activity."  29 C.F.R. § 1630.2(j)(3)(ii).  The regulations expressly state that "post-traumatic stress disorder . . . substantially limits brain function."  29 C.F.R. § 1630.2(j)(3)(iii).  But Mr. Kravits has identified no evidence that he suffered from post-traumatic stress disorder, and the court cannot rely on the bare assertion made in the complaint.

There is, however, evidence that Mr. Kravits suffered from sleep apnea, among other conditions.  In a June 2009 decision,

the Department of Veterans Affairs found that Mr. Kravits suffered from "obstructive sleep apnea" that was "directly related to military service[.]"   [Doc. No. 34, Exh. 6, p.2.] Mr. Kravits testified that his sleep apnea interferes with his sleep, causing him to be tired and interfering with his ability to concentrate.   Sleeping is classified as a major life activity.  29 C.F.R. § 1630.2(i)(1)(i).   Mr. Kravits further argues that the combination of his sleep apnea, fibromyalgia, and depression substantially limit the major life activity of learning.  It would be reasonable to conclude that an individual with Mr. Kravits's conditions would be substantially limited in the major life activities of learning and sleeping "as compared to most people in the general population."   See 29 C.F.R. § 1630.2(j)(1)(ii).

In support of its argument that Mr. Kravits was not substantially impaired, the Department points to a series of activities in which he engaged.  Specifically, the Department identified his ability to do administrative work; activities in connection with his home purchase and renovation; similar activities related to his father's estate, home sale, and renovation; pursuing a college education; and vacationing in Thailand.  The new ADA regulations, however, directly undermine the Department's examples, stating in relevant part:

14

In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

29 C.F.R. § 1630.2(j)(4)(iii). Contrary to this regulation, the Department seeks to undercut Mr. Kravits's evidence of disability by highlighting his physical, social, and academic achievements. Mr. Kravits's ability to engage in the activities identified by the Department do not alter the fact that he has presented evidence that could reasonably establish that his diagnosed conditions substantially limited his ability to sleep and learn, as compared to most people in the general population.

Viewing the facts relevant to Mr. Kravits's medical conditions in the light most favorable to him, and assessing those facts under the new, less searching analysis called for by the ADAAA, there is sufficient evidence to permit a reasonable jury to find that Mr. Kravits has a disability under the Rehabilitation Act. This conclusion is bolstered by the following guidance provided by the regulations: "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an

individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iii).

###### b. Qualified Individual

Mr. Kravits must also establish that he is a "qualified individual" under the ADA. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001). A plaintiff claiming to be a qualified individual with a disability "must satisfy the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999) (internal quotation omitted). Such a plaintiff must also "be able to perform the essential functions of the position held or desired, with or without reasonable accommodations." Id. (internal quotation omitted). Here, Mr. Kravits presumably met the prerequisites for the position he held because he was in fact hired for that position. It is similarly presumable that he could not perform the essential functions of the position without reasonable accommodation because deficient performance was the basis for his termination.[2]   The issue, therefore, is whether Mr. Kravits

---

[2] This is accurate notwithstanding Mr. Kravits's affirmation, made in response to a question on an EEOC complaint form [Doc. No. 29, Exh. 12, p.7], that there were no essential duties he was unable to do because of his disability. The question calls for Mr. Kravits to make a statement about the ultimate legal issue in his disability claim, and, again, it is undercut by the

could, with reasonable accommodations, perform the essential functions of his job. See id.

"On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 670 (3d Cir. 1999) (internal quotation omitted). Defendants are entitled to summary judgment where "the plaintiff's proposal is either clearly ineffective or outlandishly costly." Id. "Following a prima facie showing by the plaintiff that a reasonable accommodation exists which would make her qualified, the burden shifts to the defendant to prove either that the accommodation is unreasonable or that it creates an undue hardship for the defendant." Id.

Reasonable accommodations are defined by the ADA regulations as:

> Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position[.]

29 C.F.R. § 1630.2(o)(1)(ii). Such modifications may include "appropriate adjustment or modifications of examinations,

---

fact that he was terminated for failure to adequately perform the core tasks required of him, as well as the arguments that his disabilities contributed to that failure. Viewed together, the facts demonstrate that Mr. Kravits felt he needed accommodations to complete his properly complete his work.

training materials, or policies . . . and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(o)(2)(ii).

Mr. Kravits testified that he requested an ergonomic keyboard and step-by-step instructions for his projects. He made these requests to his supervisors orally, but the ADA does not require that he submit a written request, as the Butler VAMC's procedures dictated. See Taylor, 184 F.3d at 313 (observing that notice of need for reasonable accommodation need not be in writing or "invoke the magic words 'reasonable accommodation[.]'"). The costs of these accommodations do not, on their face, exceed the potential benefits. Providing more detailed instruction seems tailored to address Mr. Kravits's shortcomings in preparing job vacancy notices and completing other projects. While providing this written instruction would surely require an additional expenditure of time and resources, it is not clear that the costs would outweigh the benefits or that it would impose an undue hardship on the Department. The Department has identified no evidence suggesting that providing step-by-step instructions to Mr. Kravits would be an undue hardship. Accordingly, a reasonable jury could conclude that more detailed project instructions – in the form of a step-by-step guide or checklist – would have enabled Mr. Kravits to complete his work in a satisfactory manner.

Because Mr. Kravits has adduced evidence that he requested a facially reasonable accommodation, and the Department has adduced no evidence that it would impose an undue hardship, there is, at a minimum, a genuine issue of material fact essential to determining whether Mr. Kravits is a qualified individual with a disability. Therefore, the court cannot grant the Department's motion for summary judgment on the basis that Mr. Kravits has failed to establish a prima facie case of discrimination.

### B. Legitimate Nondiscriminatory Reason for Termination

Having determined that Mr. Kravits has adduced sufficient evidence to support a prima facie case of discrimination, the court must next determine whether the Department offered a legitimate, nondiscriminatory reason for terminating his employment.   See Wishkin, 476 F.3d at 185.   The Department contends that it terminated Mr. Kravits's employment because of his well-documented job performance issues.   [Doc. No. 27 at 18.]   The Court agrees that the Department has offered a legitimate, nondiscriminatory reason for terminating Mr. Kravits, and concludes that the Department has met its burden.

### C. Pretext

The next question, therefore, is whether Mr. Kravits has adduced evidence to either discredit the Department's proffered reason for his termination or to support a reasonable inference

that discrimination was the cause of, or a motivating factor

for, the termination.    See Wishkin, 476 F.3d at 185.    Mr.

Kravits argues the Department's failure to offer accommodations

for Mr. Kravits' disabilities "undermines its nondiscriminatory

reasons for . . . termination."    [Doc. No. 31 at 19.][3]    The

Department's argument on this point is limited to one sentence,

stating that Mr. Kravits "cannot" offer credible evidence that

discrimination was the basis for his termination.    [Doc. No. 27

at 19.]    Because failure to provide reasonable accommodations is

unlawful discrimination, and it is reasonable to infer that Mr.

Kravits's deficient performance was caused by a lack of

reasonable accommodations, there is a triable issue of fact on

the question whether the Department's proffered reason for

terminating Mr. Kravits was pretext for discrimination.

"[A]n employer commits unlawful discrimination under the

ADA if the employer does not mak[e] reasonable accommodations to

the known physical or mental limitations of an otherwise

qualified individual with a disability[.]"    Taylor, 184 F.3d at

311.    As for the process by which the need for an accommodation

is raised and addressed, the U.S. Court of Appeals for the Third

Circuit has held, based on ADA regulations and interpretive

---

[3] While Mr. Kravits argues that the Department failed to
accommodate his disabilities, he has not asserted a failure to
accommodate claim.    The First Amended Complaint [Doc. No. 18]
contains only a count for wrongful termination.

20

guidelines, that both the employer and employee "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Taylor, 184 F.3d at 312 (quoting Mengine v. Runyon, 114 F.3d 415, 419-20 (3d Cir. 1997)). The court must determine "whether the employee . . . provide[d] the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Id.

Mr. Kravits's unfulfilled requests for an ergonomic keyboard and additional instruction on his assignments, followed by his subsequent termination for failure to complete assignments in an accurate and timely fashion, could support a reasonable inference that the cause of his termination was discrimination. There is evidence that Mr. Kravits requested accommodations, and there is no evidence that the Department engaged in the interactive process required to determine the whether accommodation is appropriate. See id. at 312. Mr. Kravits was subsequently terminated because he consistently made mistakes in job postings he was required to draft, along with other errors. Whether more detailed instructions could have obviated these mistakes and allowed Mr. Kravits to keep his job presents a question properly resolved by a jury.

Viewing the evidence in the light most favorable to Mr. Kravits, a reasonable inference can be drawn that he was

terminated for performance issues caused by the Department's failure to provide reasonable accommodations for his disabilities. Because failure to provide accommodations constitutes discrimination, it is reasonable to infer that his firing was caused by discrimination. Accordingly, Mr. Kravits is entitled to a jury trial.

IV.  CONCLUSION

For the foregoing reasons, the Department of Veterans Affairs' motion for summary judgment is denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

David A. Kravits,                    )
              Plaintiff,             )
                                     )
     v.                              ) Civil Action No. 10-861
                                     )
Eric K. Shinseki, Secretary,        )
Department of Veterans Affairs,)
              Defendant.             )

ORDER

AND NOW, this 24th day of February, 2012, IT IS HEREBY

ORDERED that Defendant's Motion for Summary Judgment [Doc. No.

26] is DENIED.

BY THE COURT,

_____, C.J.

cc:  All Counsel of Record